UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  17-20057-CR-WILLIAMS/SIMONTON

UNITED STATES OF AMERICA,

       Plaintiff,

v.

EVELINA SOPHIA REID,

       Defendant.

_____/

## DEFENDANT REID'S SENTENCING MEMORANDUM

The Defendant, Evelina Reid, through undersigned counsel, files this memorandum to assist the Court in fashioning a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing codified in 18 U.S.C. § 3553(a), and states that:

Ms. Reid's behavior in the instant case cannot likely be considered aberrant as it occurred over a period of years.  But it is surely uncharacteristic and certainly not deserving of the penalty contemplated by Sentencing Guidelines.[1]

The Defendant's participation in the offenses charged here was undoubtedly motivated by need, not greed.  When her involvement began, she was a single mother of three children who were then all under ten years of age.  Although the

---

[1] The Defendant's Presentence Investigation Report (PSI) provides an advisory sentencing range of 97 to 120 months incarceration, PSI at ¶ 82, in addition to the two year sentence required by her guilty plea to Count 3 of the instant Indictment. She has, however, previously filed an objection to that computation arguing that she is deserving of a reduction for acceptance of responsibility. (DE 31)  If that challenge is successful, the resulting range will instead be 70 to 87 months incarceration.

father of her oldest child was required by a court to pay child support, which he did sporadically, the father of her twins was not.  Nor did he choose to do so voluntarily.  PSI at 52.  The man whom she would ultimately marry was serving a four year sentence in the Florida Department of Corrections.  PSI at ¶ 53.  Her father had not long before been released from custody after serving a ten year sentence imposed by the Honorable Donald Graham.  PSI at ¶¶ 47, 49.  She was emotionally alienated from her mother, who was emotionally abusive toward her, and therefore reluctant to ask her for financial assistance.  PSI at ¶ 50.  And the loans that she had incurred for her education – and to enhance her career – were becoming onerous.  PSI at ¶ 72.  Therefore, when the opportunity to supplement her income arose, she regrettably accepted.

As in most fraud prosecutions, the most decisive factor here in determining the applicable sentencing range is the amount of intended loss.[2]  The PSI recommends – without objection – an enhancement of 20 levels based on a loss in excess of $9.5 million.  But Ms. Reid herself received payment that in a different context would justify *at most* an enhancement of only two levels.[3]  That disparity alone warrants a significant variance from the advisory sentencing range.  *See USSG* § 2B1.1, comment.  (n. 20(C)) (recognizing that a downward departure may

---

[2] Notably, the PSI provides that as of the date that it was prepared, only $48 in restitution was owed by Ms. Reid.  PSI at ¶ 22.

[3] In both pre – and post – arrest statements to law enforcement, the Defendant consistently recollected that the monies paid to her by the person for whom she obtained the personal identification information did not exceed $5,000.  A two level increase pursuant to *USSG* § 2B1.1(b)(1) does not apply unless the loss is greater than $6,500.  Accordingly, even a two level increase might be unwarranted.

be applicable in cases in which the offense level "substantially overstates the seriousness of the offense").

Although the Defendant's lack of nefarious intent is the primary justification for a downward variance, it is hardly the only one. Ms. Reid is currently being treated – on her own initiative and at her own expense – for several mental and emotional disorders, the most debilitating being Major Depression, recurrent, severe with psychosis.[4],[5] Her depression is certainly understandable due to the significant number of calamities that have befallen her, including: 1) her father's incarceration; 2) the repeated sexual assaults by her cousin for which her mother blamed her, PSI at ¶ 50; 3) her husband's imprisonment and subsequent physical and emotional abuse of her, resulting in her staying at a shelter for battered women, PSI at ¶ 53; 4) her son's diagnosis of attention deficit hyperactivity disorder (ADHD) and anger issues, PSI at ¶ 52; and 5) her own significant medical issues which have generated literally thousands of pages of treatment records. PSI at ¶¶ 58, 59. Perhaps the most compelling of those events, however, occurred after her arrest in this case when the father of her oldest child essentially abducted Ketron after learning of the instant proceedings. PSI at ¶¶ 11, 51. The unexpected – and nearly complete – isolation from her child for the past several months nearly rivals whatever punishment this Court will ultimately impose.

---

[4] The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5) categorizes major depressive disorder as a "severe" mental illness.

[5] *See also* Dr. Heather Holmes' report being filed contemporaneously under seal.

Despite all that she has suffered, Ms. Reid is nothing if not resilient.  She is currently working six days a week to support herself and the two children who remain in her care.  When available, she also works special events at Hard Rock Stadium.  She attends the substance abuse treatment required as a condition of her pretrial release in addition to the mental health treatment that is not.  At the Court's suggestion, she attends Narcotics Anonymous to wean herself from her reliance on marijuana that she had previously used to "self-medicate".  She has on at least four occasions – January 29, 2016, February 9, 2016, July 19, 2016 and August 18, 2017 – admitted her involvement in the charged offenses to either officials at Jackson Memorial Hospital or law enforcement authorities.  But even before being confronted with her admittedly criminal conduct, she had ceased that activity.

Ms. Reid is not now seeking to excuse the behavior that brings her before the Court for sentencing.  But neither should that behavior be viewed in isolation.  Again, when the instant offenses began, her economic status was precarious.  Her father, with whom she shared a "warm and affectionate" relationship,[6] provided some assistance but had limited means due to his prior convictions.  Her mother had the financial capability to help but the Defendant was understandably reluctant to approach the woman who had called her a "whore" and a "bitch" .[7]  Few – if any –  other options existed.  Had she not been afflicted by a mental disorder, maybe she would have still resisted the entreaties of a childhood friend to obtain

---

[6] *See* Dr. Holmes report at p.3.
[7] *Ibid*.

the personal identification information.   Unfortunately, however, she did not.[8]
Combined with the significantly inflated loss amount engendered by the Sentencing
Guidelines, these factors surely justify a downward variance from the advisory
sentencing range.


Respectfully submitted,                              Respectfully submitted,

MICHAEL CARUSO                                 MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER            FEDERAL PUBLIC DEFENDER

BY:    s/ Eric M. Cohen                            BY: s/Katie Carmon
Eric M. Cohen                                          Katie Carmon
Assistant Federal Public Defender           Assistant Federal Public Defender
Florida Bar No. 328065                            Florida Bar No. 73467
150 West Flagler Street, Suite 1700        150 West Flagler Street, Suite 1700
Miami, Florida 33130-1556                     Miami, Florida  33130-1556
Tel:  305-530-7000/Fax:  305-536-4559    Tel: 305-530-7000/Fax: 305-536-4559
E-Mail Address: Eric_Cohen@fd.org       E-Mail Address: Katie_Carmon@fd.org

---

[8] Notably, even during this time, she cared not only for her children but also for her seriously ill grandfather.  *See* Dr. Holmes' report at p. 4.

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2017, undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF and has served same via U.S. Mail to those counsel(s) who are not authorized to receive electronically Notice of Electronic Filing.

    s/ Eric M. Cohen
Eric M. Cohen